488 So.2d 437 (1986)
A.P. HATCH, et al., Plaintiffs-Appellees,
v.
ACADIANA BANK & TRUST CO., Defendant-Appellant.
No. 85-644.
Court of Appeal of Louisiana, Third Circuit.
May 14, 1986.
*438 Ardoin & Daigle, J. Winston Ardoin, Eunice, for defendant-appellant.
Colleen McDaniel, and Mouton, Roy, Carmouche, Bivins, Judice & Henke, Ralph E. Kraft, Lafayette, for plaintiffs-appellees.
Before STOKER and KING, JJ., and COX, J. Pro Tem.[*]
KING, Judge.
The issues presented by this appeal are whether or not the trial court erred in allowing a copy of a lost check to be used as a foundation for a suit seeking the enforcement of the lost check, whether or not the trial court erred in finding detrimental reliance upon defendant's certification of the lost check, and whether or not the trial court was correct in finding that defendant could not rescind certification of the check without notice to the payee.
A.P. Hatch, A.P. Hatch, Inc., and the law firm of Mouton, Roy, Carmouche, Bivins & Kraft (all hereinafter sometimes referred to as plaintiffs) brought suit against Acadiana Bank & Trust Company (hereinafter referred to as defendant), seeking payment of a check drawn on defendant and subsequently certified by defendant. After a trial on the merits, the trial court rendered judgment for $20,000.00, together with legal interest, and court costs, in favor of plaintiffs, granting judgment for this sum in favor of A.P. Hatch, individually, and against defendant. From this judgment *439 defendant has suspensively appealed. We affirm.

FACTS
Sometime in the Spring of 1980, Mr. John Eddie Soileau, in his capacity as President and sole stockholder of Sunland Construction Company (hereinafter referred to as Sunland), entered into negotiations with Mr. A.P. Hatch, President of A.P. Hatch, Inc., to purchase the assets and business of A.P. Hatch, Inc. During the course of these negotiations, Sunland issued a check drawn on defendant in the amount of $20,000.00 and dated April 21, 1980, payable to the order of "Mouton & Roy Escrow Account." The check was given to Mr. Ralph Kraft, the attorney for A.P. Hatch, Inc., for Mr. Kraft to hold.
Pursuant to Mr. Soileau's instruction to defendant, a stop payment order was placed on the check on April 30, 1980. On May 13, 1980, approximately two weeks after issuance of the stop payment order by Sunland to defendant, one of the employees of A.P. Hatch, Inc. brought the check to defendant and requested that defendant certify the check. At that time defendant certified the check. More than a month later, after negotiations for the sale of A.P. Hatch, Inc. to Sunland were apparently at an end, the check was deposited for credit to the trust account of the law firm of Mouton, Roy, Carmouche, Bivins & Kraft and forwarded in due course for collection. Upon being presented with Sunland's check which it had certified, defendant refused to honor the check. This check was subsequently lost or misplaced.
Plaintiffs filed suit against defendant on August 6, 1980 for $20,000.00, the amount of the check. Defendant answered the petition, asserting its entitlement to all of the defenses possessed by the maker of the check, Sunland,[1] and alternatively alleging that the check was certified in error and as a result of the fraud, misrepresentations and/or ill practices of plaintiffs.
A trial was held on November 29, 1984 at which time both sides presented the testimony of various witnesses. Mr. Hatch testified that the purpose of Sunland's issuance of the $20,000.00 check was to give Sunland the right to examine the books of A.P. Hatch, Inc. and to pay its negotiation expenses "in case the deal broke down." Mr. Hatch's testimony was corroborated by that of Mr. Kraft who testified that Mr. Hatch was concerned about Sunland, which was a competitor of A.P. Hatch, Inc., examining the corporate books of the company and that it was agreed that it would cost Sunland $20,000.00 for Sunland's accountant to examine the books of A.P. Hatch, Inc.
Mr. Soileau admitted in his deposition that he agreed to put up $20,000.00 "as good faith money" so that he could review the financial records of A.P. Hatch, Inc. to determine a purchase price for the company. However, Mr. Soileau also stated that the $20,000.00 check, which was given to Mr. Kraft, was not to be negotiated unless Sunland backed out of a deal after a sale price and all conditions were agreed upon. Mr. Soileau further admitted that he and his accountant did review and examine the financial records of A.P. Hatch, Inc.
After trial and rendition of judgment, a written judgment was signed on April 23, 1985 in favor of plaintiffs and against defendant, awarding to A.P. Hatch, individually,[2] the sum of $20,000.00, together with legal interest from date of judicial demand, until paid, and all costs of the proceedings. Defendant timely filed a suspensive appeal, *440 and contends that the trial court erred in: (1) allowing plaintiffs to use a photocopy of the check as a foundation for its suit, over its timely objection; (2) finding that plaintiffs had detrimentally relied upon its certification of the check prior to its dishonor of the check upon presentation; and (3) finding that it could not rescind certification of the check without notice to the payee.

EVIDENCE OF CHECK AT TIME OF TRIAL
Defendant contends that the trial court erred in allowing plaintiffs to use a photocopy of the check, which was lost prior to institution of suit and which remained lost at the time of trial, as a foundation for its suit despite a timely objection made at trial by its attorney. Specifically, defendant argues that plaintiffs should not have been allowed to introduce evidence of the lost check without first complying with the advertising or bond requirements of former LSA-C.C. Art. 2280, which contained the following language:
"In every case where a lost instrument is made the foundation of a suit or defense, it must appear that the loss has been advertised within a reasonable time in a public newspaper and proper means taken to recover the possession of the instrument; provided, that advertisement of a lost note shall not be necessary in any case where a surety bond given by a person who owns property liable to seizure, and who is domiciled in the parish where the security is to be given, or a commercial bond issued by an insurance company licensed to do business in the state of Louisiana, is furnished to protect the maker and/or his endorsers of said note from loss resulting from said note falling into the hands of a holder in due course provided that the bond must be in amount equal to the face of the note plus twenty-five percent thereof."
Although defendant stipulated at trial that the check had been lost, which eliminated plaintiffs' need to prove the actual loss of the check, defendant reserved its right to specifically object to plaintiffs being allowed to use a photocopy of the lost check as the foundation of its suit without first complying with the advertising requirements or complying with the bond requirements of the above quoted codal article.
Former LSA-C.C. Art. 2280 was repealed by Acts 1984, No. 331, § 1, effective January 1, 1985. LSA-C.C. Art. 1832, which now contains the subject matter of former Article 2280, does not contain any advertising or bond requirements, and simply states that:
"When the law requires a contract to be in written form, the contract may not be proved by testimony or by presumption, unless the written instrument has been destroyed, lost, or stolen."
Plaintiffs filed their suit on August 6, 1980, and the trial was held on November 29, 1984. At the conclusion of the trial the trial judge took the matter under advisement. The trial judge rendered judgment and mailed written reasons for judgment to the attorneys, by letters dated February 13 and 14, 1985, and a written judgment was signed on April 23, 1985. The question presented by defendant's timely trial objection, which was overruled by the trial judge, to plaintiffs' suit, where the lost check was made the foundation of plaintiffs' suit, is whether plaintiffs should have been required to first comply with the advertising or bond requirements of former LSA-C.C. Art. 2280 in effect at the time of institution of suit and trial, which was repealed on January 1, 1985 after the trial, but before judgment was rendered by the trial court, or only had to comply with the new law set forth in LSA-C.C. Art. 1832, which became effective on January 1, 1985. It is clear that had LSA-C.C. Art. 2880, in effect at the time of institution of suit and trial, not been repealed, defendant's objection would have been well taken and the judgment of the trial court would have to be vacated and the case remanded for further proceedings. Wallace v. Recile, 453 So.2d 606 (La.App. 4th Cir.1984).
The general rule that a statute can only have prospective application applies only to substantive laws as distinguished *441 from merely procedural or remedial laws which will be given retroactive application in the absence of language showing contrary intent. Chaudoir v. Chaudoir, 454 So.2d 895 (La.App. 3rd Cir.1984). The difference between a substantive law and a procedural law is that a procedural law merely prescribes a method of enforcing a previously existing right whereas a substantive law creates a new obligation where none existed before. Commercial Credit Claims Ser. v. Richardson, 454 So.2d 177 (La.App. 1st Cir.1984); Manuel v. Carolina Casualty Insurance Company, 136 So.2d 275 (La.App. 3rd Cir.1961).
The advertising and bond requirements of former Civil Code Article 2280 are clearly procedural. Hammond Asphalt Company, Inc. v. Joiner, 270 So.2d 244 (La.App. 1st Cir.1972). The elimination of the advertising or bond requirements of the former Civil Code Article 2280 by the 1984 Act does not create or eliminate an obligation; it merely makes enforcement of an obligation less burdensome. The defendant stipulated that the check had been lost which eliminated plaintiffs' need to prove the loss. A somewhat analogous situation was presented when LSA-C.C. Art. 2280 was amended, to require advertisement or posting of bond, after a suit was filed, in which the timeliness of the advertisement was at issue, but before it was tried. The trial judge exercised his discretion and ordered the filing of a bond in his final judgment granting recovery on the lost instrument. This court affirmed, finding that LSA-C.C. Art. 2280 was procedural and retroactive to the trial and that the trial court's judgment requiring the posting of bond rendered moot the issue of the timeliness of the advertisement. See Hammond Asphalt Company, Inc. v. Joiner, supra. Here the trial judge acknowledged in his written reasons for judgment his awareness that LSA-C.C. Art. 2280 had been repealed and that LSA-C.C. Art. 1832 became effective after the trial but before rendition of judgment. He stated that:
"Since these matters are procedural, the new provisions apply. The substance of the two articles are supposed to be contained in Civil Code Article 1832 as reenacted. See West's Special 1985 Pamphlet containing Civl Code Articles 1756 through 2291 as reenacted. That reenactment does not require advertising or security. I do not exercise any discretion I might have to require either of those two precautions. It is clear that they are not necessary."
We agree with the trial judge. If the provisions of LSA-C.C. Art. 1832 are applicable to this case, even though this codal article became effective after the suit was filed, after the note was admitted lost, after trial, and while the matter was under advisement, the problem of whether the plaintiffs had advertised or posted bond before first instituting suit would thereby be moot. It was long recognized that LSA-C.C. Art. 2280 does not announce a principle of substantive law or of pleading, but merely a rule of evidence. Hammond Asphalt Company, Inc. v. Joiner, supra; Glennon v. Holmes, 13 Orl.App. 3 (La.App. Orl.1915). The law is well established that statutes which are remedial or procedural are to be given retroactive effect in the absence of contrary language. Hammond Asphalt Company, Inc. v. Joiner, supra, and cases cited therein. Since Act No. 331 of 1984 did not indicate otherwise, we hold that LSA-C.C. Art. 1832 is applicable to pending as well as to subsequent litigation. Accordingly, we conclude that the trial court did not err in not requiring plaintiffs to first advertise the loss of the check or furnish bond, pursuant to former LSA-C.C. Art. 2280, before the lost check could become the foundation of their suit, and in allowing plaintiffs to use a photocopy of the lost check as evidence of their claim.

DETRIMENTAL RELIANCE
In his letter-ruling sent to the attorneys for plaintiffs and defendant, dated February 13, 1985, the trial judge stated:
"I conclude (1) the $20,000 check was given unconditionally, i.e., without it being dependent on the eventual outcome *442 of the negotiation; (2) that the negotiations continued well into the month of June, 1980; (3) that, by the time the check was dishonored and plaintiff learned of this fact, he had detrimentally relied on the certification and lack of notice of its cancellation...."
Defendant contends that the trial court erred in finding that plaintiffs detrimentally relied upon the certification of the check prior to its dishonoring the check.
Mr. Kraft testified at trial that he and Mr. Hatch had discussed depositing the check into his law firm's trust account when it was first received, but decided to show Mr. Hatch's good faith efforts in the negotiations by just having the check certified and holding it, rather than depositing it in the law firm's trust account. After the check was certified on May 13, 1980, Mr. Kraft testified that negotiations with Mr. Soileau continued into the first part of June, 1980. To the contrary, Mr. Soileau stated in his deposition that negotiations did not continue after he issued the stop payment order on the check, which was issued on April 30, 1984. Mr. Soileau also testified that the agreement was that the check, which was given to Mr. Kraft, was not to be cashed unless Sunland backed out of a purchase after a sale price and all conditions were agreed upon. Both sides agreed that the obstacle in consummating the sale was agreeing on the terms of a non-competitive agreement.
Mr. Hatch testified that the purpose of Sunland's issuance of the $20,000.00 check was for Sunland to have the right as a competitor to look at the books of A.P. Hatch, Inc., and to pay his negotiation expenses in case negotiations came to an end. The record clearly indicates that Mr. Soileau and his accountant examined and reviewed the financial records of A.P. Hatch, Inc. Mr. Kraft, and Mr. Jean C. Breaux, Jr., a tax attorney, also both testified that they submitted a bill to A.P. Hatch, Inc. for their services rendered in connection with the negotiations, and that they were still involved in the negotiations through the first part of June, 1980, which was after the check had been certified by defendant.
Mr. James F. Dupre, Executive Vice President of defendant, testified that he and the bank learned of the mistake that had been made in their certification of the check, which had a prior stop payment order placed on it, "the next day or something" after the check was certified, which would be on or about May 14, 1980. In fact, defendant's Certified Check Register shows that the certification was "reversed" on May 15, 1980. However, Mr. Dupre did not inform Mr. Kraft or anyone from Mr. Kraft's law firm, prior to presentation of the check for payment, that defendant had rescinded certification of the check, nor did he have personal knowledge that anyone working for defendant notified Mr. Kraft or anyone from Mr. Kraft's law firm of the attempted rescission of the certification of the check before presentation of the check for payment.
We conclude that the trial court's finding of fact that plaintiffs detrimentally relied upon the certification of the check prior to defendant's dishonoring the check is not clearly wrong or manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Company, 283 So.2d 716 (La.1973).

RESCISSION OF CERTIFICATION
The trial court specifically held that defendant could not rescind certification of the $20,000.00 check, without timely notice, and that defendant was therefore liable to plaintiffs on the check. Defendant contends that the trial court erred in concluding that it could not rescind certification of the check, because the check was certified in error, and also because plaintiffs did not detrimentally rely upon the certification. It is clear that defendant mistakenly overlooked the prior stop payment order placed on the check by Mr. Soileau when it certified that check, and therefore certified the check in error. The question presented is whether or not defendant could lawfully rescind its erroneous certification of the *443 check in the manner in which it attempted to rescind the certification.
The following statutes are applicable in the instant case:
LSA-R.S. 10:3-410(1) provides:
"Acceptance is the drawee's signed engagement to honor the draft as presented. It must be written on the draft, and may consist of his signature alone. It becomes operative when completed by delivery or notification."
LSA-R.S. 10:3-411(1) provides:
"(1) Certification of a check is acceptance. Where a holder procures certification the drawer and all prior indorsers are discharged."
LSA-R.S. 10:3-413(1) provides in relevant part:
"The ... acceptor engages that he will pay the instrument according to its tenor at the time of his engagement...."
A bank may rescind its certification of a check in certain instances, as noted in 25 A.L.R.3d 1367, § 2, which contains the following statement:
"As a general rule, a bank may cancel or rescind its certification of a check or note, provided that no rights of persons other than the holder have intervened, and that the situation or rights of the holder have not been so changed between the time of the certification and its cancellation as to render it inequitable to permit a revocation. This rule has been applied regardless of the nature of the mistake, and hence has been applied both to mistakes as to the amount of the funds of the drawer or maker, and to mistakes in overlooking stop-payment orders." (Emphasis added.)
The trial court held, and we agree, that plaintiffs detrimentally relied upon defendant's certification of the check. Although defendant unilaterally rescinded the certification on its own records, plaintiffs were not notified of the rescission, and A.P. Hatch, Inc. continued to negotiate with Sunland, in reliance on Sunland's agreement and its check which defendant had certified. For these reasons, we conclude that the trial court did not err in holding that defendant could not rescind its erroneous certification of the check without notice to the payee, and that defendant is liable on the improperly certified check to A.P. Hatch, Inc., and its assignee, A.P. Hatch, who had detrimentally relied on the check certification.
Plaintiffs assert that defendant's appeal is frivolous, and that they should be awarded attorney's fees as a result of the appeal. We find that defendant's appeal is not frivolous, and therefore no attorney's fees will be awarded.
For the foregoing reasons, the judgment of the trial court is affirmed at defendant-appellant's costs.
AFFIRMED.
NOTES
[*] Judge Ronald D. Cox of the Fifteenth Judicial District Court participated in this decision by appointment of the Louisiana Supreme Court.
[1] Defendant's assertion of entitlement to all defenses possessed by Sunland was made pursuant to a written assignment by Sunland to defendant of all claims, rights and defenses that Sunland may have with regard to the check in question.
[2] The record indicates that after institution of this suit, the plaintiff corporation, A.P. Hatch, Inc., was sold on or about August 15, 1984 with all of its rights in this lawsuit being transferred and assigned to A.P. Hatch, individually. As the plaintiff-attorney's interest in this lawsuit was only as the attorney and agent for A.P. Hatch, Inc., the judgment rendered herein was only in favor of A.P. Hatch, individually.