Judgment rendered October 2, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,854-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

| | |
|---|---|
| HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR BEAR STEARNS MORTGAGE FUNDING TRUST 2006-AC1, ASSET BACKED CERTIFICATES, SERIES 2006-AC1 | Plaintiff-Appellee |

versus

| | |
|---|---|
| DONNETTE DUNBAR, (A/K/A DONNETTE DUNBAR ENGLISH, DONNETTE D. ENGLISH, DONNETTE ENGLISH) | Defendant-Appellant |

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 526,204

Honorable Michael A. Pitman, Judge

* * * * *

| | |
|---|---|
| KELVIN G. SANDERS | Counsel for Appellant |
| MCGLINCHEY STAFFORD, PLLC By: Amanda S. Stout Jonathan G. Wilbourn | Counsel for Appellee |
| JACKSON & MCPHERSON, LLC By: Cris Jackson | |

* * * * *

Before STEPHENS, ROBINSON, and HUNTER, JJ.

**STEPHENS, J.**

This appeal arises out of a lawsuit involving the efforts of the plaintiff, HSBC Bank USA, National Association ("HSBC"), as trustee for Bear Stearns Mortgage Funding Trust 2006-AC1 Asset Backed Certificates, Series 2006-AC1 ("Bear Stearns Mortgage Funding Trust"), to collect on a lost note currently held by Bear Stearns Mortgage Funding Trust that represents indebtedness currently outstanding and due on an obligation entered into by the defendant debtor/mortgagor, Donnette Dunbar ("Ms. Dunbar"), with the original creditor/mortgagee in connection with Ms. Dunbar's purchase of a home. For the reasons set forth below, we affirm the trial court's judgment granting a motion for summary judgment filed by HSBC and denying an exception of *res judicata* filed by Ms. Dunbar.

## FACTS AND PROCEDURAL HISTORY

On February 27, 2006, Ms. Dunbar executed a promissory note (the "Note") payable to Home 123 Corporation, a California corporation, in the principal amount of $156,000 which was secured by an act of mortgage (the "Mortgage") on a home located in Caddo Parish, Louisiana.

Ms. Dunbar failed to pay her mortgage, and suit was filed on the Note and to enforce the Mortgage on November 7, 2008, by Wells Fargo Bank, acting as trustee of the Bear Stearns Mortgage Funding Trust.[1] On December 5, 2008, Ms. Dunbar filed an answer denying the allegations of the petition. On October 12, 2012, Wells Fargo Bank filed a motion to file a copy of the Louisiana Assignment of Mortgage transferring all of the rights,

---

[1] The petition was initially fax-filed by Wells Fargo Bank, then the holder of the Note and Mortgage, on November 7, 2008, but it was not physically filed with the Caddo Parish Clerk of Court's Office until November 12, 2009. A copy of the Note was attached to the November 2009 filing.

title and interest in the loan documents, and liens of Home 123 Corporation to Wells Fargo Bank as an exhibit to its original petition. On February 26, 2013, a supplemental and amending petition to update the amounts owed under the mortgage loan was filed. On May 13, 2013, Ms. Dunbar filed a general denial to the original and amended petitions. On July 22, 2013, Ms. Dunbar filed a second general denial to the amended petition.

On August 29, 2016, HSBC filed a motion to substitute party plaintiff, attaching an agreement documenting its appointment as successor trustee for Bear Stearns Mortgage Funding Trust as of November 1, 2006. Thereafter, various exceptions and motions filed by both parties were filed, heard and denied by the trial court (except for the counsel substitution and continuance motions, which were granted pro forma).

On October 5, 2020, Ms. Dunbar filed a motion for summary judgment praying for the trial court to find that the Note, which was lost, was not advertised in a reasonable time in accordance with La. R.S. 13:3741, and that plaintiff's original and amended complaint be dismissed with prejudice. HSBC filed an opposition to Ms. Dunbar's motion, noting that on March 7, 2014, JPMorgan Chase Bank, N.A., as servicer for HSBC, executed an Affidavit of Lost Note attesting that the Note was lost and could not be found after a thorough and diligent search of the hard copy collateral file pertaining to Ms. Dunbar's loan,[2] and that on April 8, 2014, an advertisement appeared in the Shreveport *Times* stating that the Note had been lost or destroyed and advising that if the Note was found it should be

---

[2] In its responses to interrogatories, HSBC further provided that a previous servicer, EMC Mortgage Corporation, on December 1, 2008, executed an affidavit of lost note.

2

returned to Graham, Arceneaux & Allen, L.L.C.  It was HSBC's position that the lost note had been advertised in a reasonable time.

A hearing was held on Ms. Dunbar's motion for summary judgment. After hearing arguments of counsel, the trial court granted Ms. Dunbar's motion, finding that HSBC had not advertised the loss of the Note within a reasonable time.  In that same judgment, HSBC's request to post a commercial bond pursuant to La. R.S. 13:3741 was granted.

HSBC later obtained a lost instrument bond from Capital Indemnity Corporation, a Nebraska corporation authorized to transact surety business in Louisiana.  This bond was recorded with the Caddo Parish Caddo Clerk of Court.  HSBC then filed a motion for summary judgment on February 6, 2023, seeking a judgment in its favor against Ms. Dunbar in the amount of $376,196.68, together with interest at a rate of 6.625% per annum from January 28, 2023, until paid, reasonable attorney fees and for all costs of the proceedings, and with a request that the Mortgage be maintained and recognized.

Ms. Dunbar opposed HSBC's motion for summary judgment and filed a peremptory exception of *res judicata*, asserting that HSBC was attempting to relitigate issues that were decided at the March 1, 2021, hearing on her motion for summary judgment.  HSBC opposed Ms. Dunbar's exception of *res judicata*.  A hearing was held.  The trial court granted HSBC's motion for summary judgment and denied Ms. Dunbar's exception of *res judicata*.  It is from this judgment that Ms. Dunbar has appealed.

## DISCUSSION

### *Consideration of HSBC's Untimely Opposition to Ms. Dunbar's Motion for Summary Judgment*

Ms. Dunbar's first assignment of error is that the trial court erred in considering HSBC's untimely opposition to Ms. Dunbar's motion for summary judgment. Ms. Dunbar's motion for summary judgment, filed on October 5, 2020, was based on HSBC's failure to advertise the lost promissory note within a reasonable time as required by La. R.S. 13:3741. HSBC filed its opposition to Ms. Dunbar's motion on February 21, 2021, a mere nine days before the March 1, 2021, hearing, in violation of La. C.C.P. art. 966(B)(2). The trial court granted the motion for summary judgment filed by Ms. Dunbar. However, in its untimely opposition, HSBC had requested that it be allowed to post a security bond. Ms. Dunbar takes the position that the trial court, by law, could not consider HSBC's request to post a security bond filed in an untimely opposition. By doing so, the trial court violated both La. C.C.P. art. 966(C)(2) and La. R.S. 13:3741. Ms. Dunbar urges that the trial court erred in granting HSBC's untimely request to post a security bond (which order was contained in its judgment granting Ms. Dunbar's motion for summary judgment).[3]

HSBC points out that the trial court *only* determined that the loss of the Note had not been advertised promptly as required by La. R.S. 13:3741. According to HSBC, the trial court correctly determined that advertisement

---

[3] Ms. Dunbar took a writ to this Court from that part of the trial court's judgment ordering that HSBC be allowed to post a security bond. The writ was denied by the Second Circuit. Ms. Dunbar then applied for a writ of certiorari to the Louisiana Supreme Court, which was also denied. *See*, *Wells Fargo Bank, National Association, As Trustee for Certificate Holders of Bear Stearns Mortgage Funding Trust 2006-AC1, Asset-Backed Certificates, Series 2006-AC1 v. Dunbar*, 21-01066 (La. 11/03/21), 326 So. 3d 894.

of the lost note was not the only method by which HSBC could satisfy La. R.S. 13:3741. Thus, in its judgment granting Ms. Dunbar's motion for summary judgment, the trial court granted HSBC's request to post a commercial bond. Although HSBC did ask that it be allowed to post a bond in its untimely response to Ms. Dunbar's motion for summary judgment, HSBC emphasizes that it also requested the trial court's permission to post a bond during the hearing on Ms. Dunbar's summary judgment motion. Nonetheless, HSBC's request was granted by the trial court as it is included in the judgment granting Ms. Dunbar's summary judgment motion. Thereafter, HSBC obtained a bond and filed its own motion for summary judgment, which HSBC contends was properly granted by the trial court.

This assignment of error is without merit. The transcript from the hearing on Ms. Dunbar's motion for summary judgment specifically reflects the trial judge's recognition of and decision ***not to consider*** HSBC's late opposition to Ms. Dunbar's summary judgment. In fact, the transcript shows the trial judge did not consider the issue of whether HSBC may post a bond to even be before the Court as it was not specifically raised in Ms. Dunbar's motion for summary judgment or in a motion filed by HSBC. The judgment signed by the trial court which contained the language providing that HSBC be allowed to post a bond was prepared by defense counsel.

***Trial Court's Denial of Ms. Dunbar's Exception of Res Judicata***

Ms. Dunbar argues that the trial court erred when it denied her exception of *res judicata*, which was filed in response to HSBC's motion for summary judgment filed on February 6, 2023. According to Ms. Dunbar, in the instant case, the trial court should have granted her exception of *res judicata* because: (1) the March 12, 2021, judgment granting her motion for

5

summary judgment is a valid judgment; (2) the March 12, 2021, judgment is final because HSBC did not take an appeal; (3) the parties in the previous motion for summary judgment are clearly the same; (4) the cause of action asserted by HSBC in its motion for summary judgment existed at the time the March 12, 2021, judgment was rendered by the trial court; and (5) the cause of action asserted by HSBC in its motion for summary judgment arises out of the same transaction and occurrence which is the subject matter of this litigation.

On the other hand, HSBC contends that the trial court correctly denied Ms. Dunbar's exception of *res judicata*. In her exception of *res judicata,* Ms. Dunbar asserted that the trial court's March 12, 2021, judgment is a final judgment, and HSBC is attempting to relitigate issues that were decided by that judgment in the motion for summary judgment it subsequently filed. Ms. Dunbar argued in the exception she filed that HSBC's motion for summary judgment was barred by *res judicata*, and all claims by HSBC against her should be dismissed.

However, notes HSBC, in Ms. Dunbar's motion for summary judgment, all that she asserted was that HSBC's advertisement of the lost promissory note was not done in a reasonable time pursuant to La. R.S. 13:3741. While Ms. Dunbar argued that HSBC's case should be dismissed in its entirety, the trial court properly granted Ms. Dunbar only the partial relief she requested. The trial court determined that HSBC had not advertised the loss of the Note within a reasonable time. As a result, HSBC was unable to rely on the first clause of La. R.S. 13:3741. However, because La. R.S. 13:3741 also provides that advertisement "shall not be necessary" when a commercial bond meeting the requirements of R.S. 13:3741 is

6

posted, the judgment signed by the trial court granting Ms. Dunbar's summary judgment also allowed HSBC to post a commercial bond in accordance with R.S. 13:3741. According to Ms. Dunbar, this ruling is a final judgment.

HSBC next argues that the fundamental problem with Ms. Dunbar's position, both before the trial court and on appeal, is that there is no second suit. At its core, res judicata envisions a second suit. Instead, this case involves an interlocutory, partial judgment on Ms. Dunbar's motion for summary judgment. *Res judicata* is not the proper procedural term for describing the relationship between this prior judgment and the judgment rendered by the trial court on HSBC's motion for summary judgment in this case.

### *Applicable Law*

Under La. R.S. 13:4231, a second action is precluded when all of the following are satisfied: (1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and, (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation. *Chauvin v. Exxon Mobil Corp.*, 14-0808 (La. 12/09/14), 158 So. 3d 761; *Bankers Ins. Co. v. State*, 53,140 (La. App. 2 Cir. 11/20/19), 285 So. 3d 59; *Barnett v. Louisiana Medical Mutual Ins. Co.*, 51,908 (La. App. 2 Cir. 5/23/18), 248 So. 3d 594, *writ denied*, 18-0944 (La. 9/28/18), 253 So. 3d 154. The doctrine of *res judicata* is *stricti juris*; any doubt concerning application of the principle of *res judicata* must be resolved against its

7

application. *Cox v. O'Brien*, 49,278 (La. App. 2 Cir. 8/13/14), 147 So. 3d 809, *writ denied*, 14-1907 (La. 11/21/14), 160 So. 3d 972.

Under its plain language, Louisiana's *res judicata* statute applies to bar "a subsequent action" between the same parties as to causes of action existing at the time of the final judgment and arising out of the same transaction or occurrence that is the subject matter of the litigation. La. R.S. 13:4231(2); *Sutton v. Adams*, 22-01672, p. 4 (La. 3/07/23), 356 So. 3d 1017, 1021. Additionally, "[a] judgment in favor of either the plaintiff or the defendant is conclusive, *in any subsequent action between them,* with respect to any issue actually litigated and determined if its determination was essential to that judgment." La. R.S. 13:4231(3); *Sutton*, *supra*. (Emphasis added). The Supreme Court has previously explained that, regarding *res judicata,* "the chief inquiry is whether the *second* action asserts a cause of action which arises out of the same transaction or occurrence that was the subject matter of the *first* action." *Burguieres v. Pollingue*, 02-1385, p. 7 (La. 2/25/03), 843 So. 2d 1049, 1053. (Emphasis added).

Because the principle of *res judicata* envisions a second suit, it does not apply in a case where there is no second action but merely judgments of the trial and appellate courts within the same suit. *Family Worship Center Church, Inc. v. Solomon*, 17-0064, p. 14 (La. App. 1 Cir. 6/21/18), 255 So. 3d 649, 658, *writ denied*, 18-1778 (La. 1/28/19), 263 So. 3d 247; *Quality Environmental Processes, Inc. v. IP Petroleum Co., Inc.*, 16-0230, p. 10 (La. App. 1 Cir. 4/12/17), 219 So. 3d 349, 364, *writ denied*, 17-00915 (La. 10/09/17), 227 So. 3d 833. In those instances, the law of the case doctrine is the proper procedural principle for describing the relationship between prior judgments by the trial and appellate courts rendered within the same case.

8

*Id.*; *Lomont v. Myer-Bennett*, 16-436, p. 8 (La. App. 5 Cir. 12/14/16), 210 So. 3d 435, 443, *writ denied*, 17-0088 (La. 2/24/17), 216 So. 3d 59.

However, the law of the case doctrine does not apply in the context of a trial court's ruling on interlocutory issues, *Land v. Vidrine*, 10-1342, p. 9 (La. 3/15/11), 62 So. 3d 36, 42; *Lathon v. Leslie Lakes Retirement Center*, 54,479, pp. 6-7 (La. App. 2 Cir. 9/21/22), 348 So. 3d 888, 892, *writ denied*, 22-01566 (La. 12/20/22), 352 So. 3d 80, nor does it attach on the basis of the denial of writs. *Babineaux v. Pernie-Bailey Drilling Co.*, 262 So. 2d 328, 332 (La. 1972); *Lathon*, 54,479 at p. 7, 348 So. 3d at 892-93. The denial of writs is a decision to not decide the issues raised in the writ application. *Levine v. First National Bank of Commerce*, 06-0394, p. 6, fn. 4 (La. 12/15/06), 948 So. 2d 1051, 1054; *Lathon*, 54,479 at p. 7, 348 So. 3d at 893.

More specifically, as noted by this Court in *Aymond v. Citizens Progressive Bank*, 52,623, pp. 35-36 (La. App. 2 Cir. 6/26/19), 277 So. 3d 477, 498, *writ denied*, 19-1200 (La. 10/15/19), 280 So. 3d 602:

> [a]denial of supervisory review is merely a decision not to exercise the extraordinary powers of supervisory jurisdiction and does not bar reconsideration of, or different consideration on, the same question when an appeal is taken from a final judgment. (Citations omitted).

*Analysis*

This assignment of error is without merit. The transcript from the hearing on HSBC's motion for summary judgment indicates that the trial court considered its prior ruling on Ms. Dunbar's summary judgment as set forth in the March 12, 2021, judgment to be the "law of the case" as to the issue(s) adjudicated therein, and on that basis granted HSBC's motion for summary judgment. Furthermore, the trial judge stated:

9

As Mr. Sanders pointed out, he took a writ to the Second Circuit. This Court's Opinion was confirmed, and the Louisiana Supreme Court denied writs on that very issue, so that has become the law of this case. Therefore, the exception of *res judicata*, if it was even applicable in this matter, the exception of *res judicata* is overruled.

As noted above, the denial of writs by this Court and the Louisiana Supreme Court is a decision to not decide the issues raised in the writ application. *Levine*, *supra*; *Lathon*, *supra*; *Aymond*, *supra*. That said, however, the trial court did not err in overruling Ms. Dunbar's exception of *res judicata*. There is no second suit, thus *res judicata* does not apply.[4]

### Trial Court's Grant of HSBC's Motion to Post Bond/HSBC's Motion for Summary Judgment

In her second assignment of error, Ms. Dunbar urges that the trial court erred in granting HSBC's untimely request to post a security bond 13 years after it had notice of the lost Note. In her fourth assignment of error, she argues that because HSBC's opposition to her motion for summary

---

[4] Furthermore, we note that the first judgment granting Ms. Dunbar's motion for summary judgment was not certified as a final judgment, and no appeal was filed therefrom. Instead, Ms. Dunbar correctly filed an application for supervisory writs to this Court. Ms. Dunbar's writ application alleged the following errors:

1. The Trial Court Allowing Plaintiffs To Post A Security Bond Thirteen (13) Years After It Became Aware That Promissory Note Was Lost Was A Legal Error, Caused Defendant Irreparable Injury And Created And Undermined The Legislative Intent Of LSA-R.S. 13:3741.

2. The Trial Court's Failure To Strike Defendant's Untimely Opposition To Defendant's Motion For Summary Judgment Was A Legal Error And Caused Defendant Irreparable Injury in violation of LSA-R.S. 966(B)(2).

Ms. Dunbar asked this Court for the following relief:

[D]efendant Prays that The Trial Court Ruling That Plaintiffs Be Allowed To Post A Security Bond Per La. RS 13:3741 And Failure To Strike Plaintiffs Opposition To Defendants Motion For Summary Judgment Be Reversed And Defendant's Motion For Summary Judgment Be Granted And Plaintiffs' Claims Be Dismissed With Prejudice.

If this Court's and the Supreme Court's denial of writs were to be taken as final judgments or "law of the case" as Ms. Dunbar seems to be arguing, she would be precluded from making the very arguments she is urging in her appeal.

judgment was not timely, its request to post a bond could not be considered by the trial court at the hearing on her motion for summary judgment on March 1, 2021. Based on the trial court's erroneous ruling, HSBC was able to file its motion for summary judgment, which the trial court then granted. Ms. Dunbar argues that allowing HSBC to post a bond 13 years after the Note was lost was a violation of La. R.S. 13:3741.

We will address these two assignments of error together. However, as set forth above, the untimeliness of HSBC's opposition to Ms. Dunbar's motion for summary judgment is irrelevant to the issues of whether the trial court erred in allowing HSBC to post bond and/or in granting its motion for summary judgment.

According to Ms. Dunbar, the language of La. R.S. 13:3741 is clear and unambiguous—it requires that a holder such as HSBC *either* advertise the lost note *or* post security "in lieu of" publishing the advertisement. Moreover, assuming that the trial court's interpretation that La. R.S. 13:3741 was silent as to when the bond was to be posted is correct, its ruling was still a legal error, urges Ms. Dunbar. Additionally, the trial court erred in finding that Ms. Dunbar did not raise the issue of HSBC's failure to post a security bond in her motion for summary judgment.

According to Ms. Dunbar, the trial court's reasoning that HSBC's advertisement of a lost note some 67 months after the Note was lost did not comply with La. R.S. 13:3741 but the posting of a security bond 13 years after default will lead to "absurd" results. If allowed to stand, the trial court's interpretation of La. R.S. 13:3741 "would provoke confusion in the lower courts" and "lead to absurd results."

11

HSBC's conduct in this case is a prime example of the absurd results of the trial court's ruling, argues Ms. Dunbar. She points out that the trial court granted HSBC the right to post a security bond on March 1, 2021. However, HSBC did not post its security bond until December 12, 2022, more than 20 months after the trial court's ruling. According to Ms. Dunbar, the trial court's ruling has rendered the "reasonable time" requirements of the statute meaningless.

HSBC asserts that the trial court did not err in allowing it to post a surety bond. Ms. Dunbar argues that the trial court erred when it granted HSBC's request to post a surety bond because the request was not made within a reasonable time. HSBC notes that its request to post a bond was granted in the trial court's judgment which granted Ms. Dunbar's motion for summary judgment that had alleged only that HSBC had not advertised the loss of the Note in a reasonable time period. Thus, HSBC was precluded from relying only on *that* part of La. R.S. 13:3741 to establish its entitlement to recover on a lost note.

Furthermore, urges HSBC, the rules of statutory construction do not support Ms. Dunbar's position. Starting with the clear and unambiguous language of La. R.S. 13:3741, in all cases involving a lost note that rely on advertisement, the loss must be advertised within a reasonable time. However, advertisement is not required if a bond is obtained. HSBC contends that La. R.S. 13:3741 does not require that this bond be obtained within any certain time—other than it is needed in order to obtain a judgment on a lost note if there is no timely advertisement.

Considering La. R.S. 13:3740 and 13:3741 together, it is clear that the only time period for posting a bond is before a judgment is rendered on the

lost Note, argues HSBC. La. R.S. 13:3740 requires that when a judgment is sought on a lost instrument, evidence must be given of the instrument's contents and that the loss is probable. The trial court may also order reasonable security be given to indemnify the party against the appearance of the instrument.

La. R.S. 13:3741 then allows alternatives—either an advertisement or a bond. A mortgagee/creditor can proceed with its case when the loss of the note has been advertised within a reasonable time and proper means are taken to recover the instrument. The clear purpose of an advertisement is to alert the public of the loss and to recover the note if possible. If the note is recovered, the maker avoids the risk that someone else could claim rights under the note. In the alternative, one seeking to enforce the note can dispense with an advertisement by obtaining a surety bond. The lost instrument surety bond protects the parties in the event another person seeks to enforce the instrument.

According to HSBC, this interpretation of the purpose and intent of La. R.S. 13:3741 is consistent with the plain language of the statute. The semicolon in R.S. 13:3741 signals two related, independent clauses, and the use of the word "provided" is a disjunctive signaling that advertisement of the lost note is not required if a surety bond is obtained. Ms. Dunbar urges the Court to ignore the disjunctive semicolon and "provided," and conclude that the phase "within a reasonable time" applies to both the advertisement and acquisition of the bond.

HSBC emphasizes that La. R.S. 13:3740-3741 do not ***impose a duty*** to obtain a bond. HSBC concedes that these statutes do provide for a bond when ordered by the court, then points out, however, that a court order is not

13

required for the enforcement of a lost note or for acquisition of a bond in relation thereto. Instead, a party can obtain a bond on its own as an alternative to advertising the lost note. Therefore, a person trying to enforce a lost note does not have a statutory obligation to secure a bond.

HSBC further reasons that the purpose of a bond is to protect the maker from multiple claims, irrespective of when the claim may arise. To make this protection available only if a bond is obtained by a certain time would significantly impact the rights of secured lenders. As was the case here, mortgage loans are often sold, loan servicers are engaged and replaced, and different entities may be the custodian of records for the secured party. Occasionally during the transfer of the physical collateral file associated with these changes, notes will be lost. Sometimes, the loss is not discovered until the loan becomes delinquent and the lender looks for the note in order to institute foreclosure proceedings. If this Court were to hold that a bond must be obtained at the time of the loss of the note or at a time other than before a judgment is rendered, such a precedent would have far-reaching effects and devastating consequences, urges HSBC.

Finally, HSBC asserts that its request to post a bond was in fact timely. The Code of Civil Procedure specifically allows motions to be made during a hearing or in open court. La. C.C.P. art. 961. HSBC made such a motion during the hearing on Ms. Dunbar's motion for summary judgment and admits that the transcript of the hearing reflects that the trial court stated that the issue was not before it that day, and HSBC could move for such relief at a later date. Nonetheless, as noted above, the judgment prepared and submitted by Ms. Dunbar's counsel included an order that HSBC be allowed to post a bond. This judgment was signed by the trial court.

14

HSBC reiterates that La. R.S 13:3740 and 13:3741 do not require a court order for a holder to obtain and post a bond. La. R.S. 13:3740 provides that a court *may* order reasonable security be given. On the other hand, La. R.S. 13:3741 provides that the holder may obtain a bond to dispense with the requirement of advertising the lost instrument in a reasonable time. HSBC had the right to post a bond with or without specific authority from the trial court. Thus, whether the trial court considered HSBC's written request in its opposition is irrelevant and did not impact the trial court's ruling on Ms. Dunbar's motion for summary judgment. The trial court admitted Ms. Dunbar's evidence and granted the motion for summary judgment she filed on the grounds upon which it was based.

As for the trial court's grant of HSBC's motion for summary judgment, HSBC points out that all Ms. Dunbar contests is the order allowing HSBC to post a bond, which she alleges was not obtained timely. She does not object to any of the other facts or legal arguments in support of HSBC's motion. Therefore, since the trial court had the discretion to order HSBC to post a bond, and this bond was posted before HSBC sought its summary judgment against Ms. Dunbar, HSBC urges this Court to affirm the trial court's judgment granting summary judgment in HSBC's favor. According to HSBC, the following facts and legal arguments pertain to the *merits* of its summary judgment motion.

HSBC produced a true and correct copy of the Note, which sets forth Ms. Dunbar's unconditional promise to pay $156,000, with an interest rate of 6.625%. Monthly payments are due on the 1st of each month beginning April 1, 2006, with a maturity date of March 1, 2036. The Note also provides for the payment of late charges of 5.00% for each overdue principal

and interest payment, and the right to recover all costs and expenses incurred by the Note holder related to enforcement of the Note, including reasonable attorney fees.

The Note is paraphed "Ne Varietur" with the Mortgage of the same date. The Mortgage sets forth Ms. Dunbar's obligations to escrow an amount to pay taxes, assessments, insurance, and other charges, as well as the lender's right to take action if she fails to perform the conveyances and agreements set forth in the Mortgage. Specifically, the lender has the right to do and pay for whatever is reasonable or appropriate to protect the lender's interest in the property and rights under the Mortgage. Any amounts that the lender incurs in taking such action is an additional debt of Ms. Dunbar's secured by the Mortgage.

Ms. Dunbar admits that she executed the Note. The Mortgage is an authentic act as it was executed before a notary and two witnesses. Accordingly, the Mortgage constitutes full proof of its terms. La. C.C. art. 1835. Two lost note affidavits, each with a copy of the Note, have been produced. Select Portfolio Services, the current servicer and attorney-in-fact for HSBC, obtained a commercial surety bond in the amount of $195,000 on December 12, 2022, which is the face amount of the Note plus 25 percent. Because the requirements of La. R.S. 13:3740 and 3741 have been met, as have those of La. R.S. 10:3-301 and 3-309,[5] and HSBC has produced a copy

___

[5] La. R.S. 10:3-301 defines a "person entitled to enforce" an instrument as (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to R.S. 10:3-309 or 10:3-418(d). Because the mortgage is an accessory obligation to the note, which is the principal obligation, by proving its right to enforce the note, the creditor may also enforce the mortgage without the necessity for an assignment of that mortgage. La. C.C. arts. 2645, 3282; *Gaines v. Bonnabel*, 168 La. 262, 266, 121 So. 764, 765-66 (1929); *U.S. Bank National Ass'n v. Dumas*, 12-1902,

16

of the Note and Mortgage, HSBC asserts that it is entitled to payment under the terms of the Note and Mortgage.

In support of its motion for summary judgment, HSBC submitted the affidavit of Document Control Officer Sherry Benight. In her affidavit, she detailed the amounts owed under the terms of the Note and Mortgage and the existence of default. Specifically, Ms. Benight confirmed that the Note and Mortgage were due for the March 1, 2009, payment. She also identified the unpaid principal balance, the interest due through January 27, 2023, the

p. 19 (La. App. 1 Cir. 4/03/14), 144 So. 3d 29, 43, *writ denied*, 14-0943 (La. 8/25/14), 147 So. 3d 1119.

HSBC does not have possession of the original Note, which is lost. A person not in possession of an instrument is entitled to enforce the instrument if (1) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (2) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (3) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process. La. R.S. 10:3-309(a). If the requirements of La. R.S. 10:3-309(a) are met, and the person proves the terms of the instrument and the right to enforce it, La. R.S. 10:3-108 applies as if the person seeking to enforce the instrument had produced the instrument. La. R.S. 10:3-309(b).

La. R.S. 10:3-308 provides that if the validity of signatures on an instrument is admitted or proved, the plaintiff producing the instrument is entitled to payment if the plaintiff proves he is entitled to enforce the instrument under La. R.S. 10:3-301, unless the defendant proves a defense or claim in recoupment. La. R.S. 10:3-308(b).

Standing to enforce the Note arises from the Bear Stearns Mortgage Trust's possession of the Note, endorsed in blank, and its compliance with La. R.S. 13:3740-3741. The Note was originally payable to Home123 Corporation. The Note was then endorsed by Home123 Corporation to New Century Mortgage Corporation. Since the Note and the Home 123 Corporation endorsement state it was payable to an identified entity, the Note was an Order Note per La. R.S. 10:3-109(b). New Century Mortgage Corporation then endorsed the Note in blank, making it bearer paper and enforceable by the holder of the Note. *See*, La. R.S. 10:3-205(b), La. R.S. 10:3-109(c). Possession of the Note was then placed into the Bear Stearns Mortgage Trust. EMC Mortgage Corporation served as the loan servicer and received the original Note on behalf of the trustee for the Bear Stearns Mortgage Trust. At that time, Wells Fargo served as the trustee for the Bear Stearns Mortgage Trust.

On December 1, 2008, loan servicer EMC Mortgage Corporation executed a lost note affidavit confirming that trustee Wells Fargo was the holder of the Note, which had been misplaced or lost and could not be located. Wells Fargo resigned as trustee, and HSBC was appointed the new trustee. Servicing of the loan was transferred to JPMorgan Chase Bank, N.A. On March 7, 2014, JPMorgan Chase executed a lost note affidavit confirming that the original Note could not be located, and that loss of possession of the Note was not due to cancellation or transfer of the Note.

*per diem* owed after January 27, 2023, and several other charges due under the terms of the Note and Mortgage. As a matter of law, the Note and Mortgage, together with the affidavit, establish the existence of and the extent of the indebtedness. *See*, *Capital One NA v. Walters,* 47,157, pp. 5-6 (La. App. 2 Cir. 6/20/12), 94 So. 3d 972, 975.

The evidence establishes that the Note and Mortgage are due and unpaid, no payment having been tendered for the installments due March 1, 2009, and thereafter. Demand was made on Ms. Dunbar to bring the loan current, but she did not comply with said demand. All payments were properly applied to the loan. As of December 28, 2022, the outstanding amount is $376,193.68, plus additional interest from January 28, 2023, and other amounts, including reasonable attorney fees, which are due under the terms of the Note and Mortgage.

***Applicable Law***

La. R.S. 13:3740 provides for proof of the contents of a lost negotiable instrument, providing:

> When an instrument in writing, containing obligations which the party wishes to enforce, has been lost or destroyed, by accident or force, evidence may be given of its contents, provided the party show the loss, either by direct testimony, or by such circumstances, supported by the oath of the party, as render the loss probable; and in this case, the judge may, if required, order reasonable security to be given to indemnify the party against the appearance of the instrument, in case circumstances render it necessary.

In such cases, La. R.S. 13:3741 requires that the loss of the note be advertised or that a bond be posted. *See*, *Wells Fargo Financial Louisiana, Inc. v. Bordelon*, 21-80 (La. App. 5 Cir. 12/22/21), 334 So. 3d 996; *U.S. Bank National Ass'n v. Custer*, 09-802 (La. App. 5 Cir. 2/09/10), 33 So. 3d 303. Specifically, La. R.S. 13:3741 states:

18

In every case where a lost instrument is made the foundation of a suit or defense, it must appear that the loss has been advertised within a reasonable time in a public newspaper and proper means taken to recover the possession of the instrument; provided, that advertisement of a lost note shall not be necessary in any case where a surety bond given by a person who owns property liable to seizure, and who is domiciled in the parish where the security is to be given, or a commercial bond issued by an insurance company licensed to do business in the state of Louisiana, is furnished to protect the maker and/or his endorsers of said note falling into the hands of a holder in due course provided that the bond must be in amount equal to the face of the note plus twenty-five percent thereof.

In a foreclosure proceeding by ordinary process, the general rules applicable to ordinary lawsuits are followed. In the instant case, which is a foreclosure by ordinary process, because the Note that is secured by the Mortgage was alleged to have been lost, it could not be introduced into evidence, which is why HSBC is bound by the evidentiary requirements of La. R.S. 13:3741. *See*, *Hatch v. Acadiana Bank & Trust Co.*, 488 So. 2d 437, 441 (La. App. 3 Cir. 1986); *Hammond Asphalt Co. v. Joiner*, 270 So. 2d 244, 246 (La. App. 1 Cir. 1972).

In the predecessors to La. R.S. 13:3740 and 13:3741, as part of the necessary preliminary proof of the contents of a lost instrument, testimonial proof was admissible to prove the contents of a lost instrument, upon proof of the loss (La. C.C. art. 2279 (1870)), and the loss was required to have been advertised in newspapers, unless adequate security was given by the party of interest (La. C.C. art. 2280 (1870)). Saul Litvinoff, 5 Louisiana Civil Law Treatise, *The Law of Obligations*, §12.09 (2d ed. 2001).

Although jurisprudence interpreting these provisions is not plentiful, Louisiana courts have held that the failure to advertise a lost note prior to filing suit is not fatal to a foreclosure action and does not otherwise bar recovery on the note. Likewise, older cases have held that a plaintiff's

19

failure to advertise, even when the suit is pending, only abates the case until the advertisement is accomplished. *Shreveport Long Leaf Lumber Co. v. Garson Bros.*, 152 La. 343, 93 So. 117 (1922); *Glennon v. Holmes*, 1915 WL 1604 (La. App. Orl. 1915). More recently, the First Circuit recognized that, by complying with the bond portion of the statute, advertisement of the lost note can be dispensed with, and the problem of whether an advertisement is untimely can be avoided. *Hammond Asphalt Co., supra.*

Appellate courts review summary judgments *de novo* under the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Leisure Recreation & Entertainment, Inc. v. First Guaranty Bank*, 21-00838 (La. 3/25/22), 339 So. 3d 508; *Elliott v. Continental Cas. Co.*, 06-1505 (La. 2/22/07), 949 So. 2d 1247; *Reynolds v. Select Properties, Ltd.*, 93-1480 (La. 4/11/94), 634 So. 2d 1180; *Davis v. Whitaker*, 53,850 (La. App. 2 Cir. 4/28/21), 315 So. 3d 979. A motion for summary judgment will be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).

Where the facts are undisputed and the matter presents a purely legal question, summary judgment is appropriate. *Higgins v. v. Louisiana Farm Bureau Cas. Ins. Co.*, 20-01094 (La. 3/24/21), 315 So. 3d 838. Plaintiff establishes a prima facie case to enforce a promissory note where plaintiff (1) produces and presents the note into evidence; (2) shows that it was signed by the defendant; (3) that the defendant has defaulted; and (4) as to an assignee, presents evidence of a chain of assignments. *National Collegiate Student Loan Trust 2003-1 v. Thomas*, 48,627 (La. App. 2 Cir.

11/20/13), 129 So. 3d 1231; *Security National Partners, Limited Partnership v. Baxley*, 37,747 (La. App. 2 Cir. 10/29/03), 859 So. 2d 890.

Once the plaintiff submits evidence establishing its prima facie case, the summary judgment burden then shifts to the defendant to submit evidence establishing the existence of a triable issue of fact with respect to a bona fide defense. *National Collegiate Student Loan Trust 2003-1*, *supra*; *Thomas v. Bryant*, 597 So. 2d 1065 (La. App. 2 Cir. 1992).

***Analysis***

We will first address Ms. Dunbar's contentions that the trial court erred in finding that she did not raise the issue of HSBC's failure to post a security bond in her motion for summary judgment, and that the trial court erred in granting HSBC's motion to post bond. This Court has examined the record in its entirety. The trial court's judgment granting Ms. Dunbar's motion for summary judgment was clear—it was granted ***solely*** upon the basis she urged in her motion, which was that HSBC did not advertise the lost note within a reasonable time. The trial court could not grant relief which was not sought.

As to HSBC's "motion to post bond," the trial court stated on the record that it was aware that HSBC's opposition was untimely, and the court advised HSBC to file a motion "at a later date." However, the judgment prepared for the trial court to sign granting defendant's summary judgment also included the following language—"IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that plaintiff, HSBC BANK USA, be allowed to post a bond in this matter with the Caddo Parish Clerk of Court." This does not mean that the trial court granted HSBC's motion. Instead, it appears that the trial court reconsidered its decision on the issue or simply

signed the judgment it was presented with by counsel.  Nonetheless, as set forth below, the trial court had the discretion to allow HSBC to post a bond.  Furthermore, we find, as argued by HSBC, said bond could have been filed without leave of court.

From a contextual standpoint, while we agree with Ms. Dunbar that La. R.S. 13:3741 has a "reasonableness" requirement, it is clearly limited to the advertisement option.  First, the word "reasonable" occurs *within a phrase describing the advertisement itself*— "it must appear that the loss has been advertised within a reasonable time in a public newspaper." Second, use of the disjunctive "provided" between the two phrases setting forth the alternatives further indicates the legislature's intent to limit the "reasonableness" restriction to the advertisement option.  Ms. Dunbar's interpretation of La. R.S. 13:3741 as grafting the reasonable time requirement for a lender choosing to advertise a lost note onto a holder who posts a bond in accordance with the second part of La. R.S. 13:3741 in its enforcement of an obligation involving a lost note would create an untenable and inequitable position for said creditor, one this Court thinks was not envisioned by the drafters of the statute.

Instead, our legislature's requirement that an advertisement be posted within a reasonable time, or a bond be obtained by a creditor/holder prior to obtaining judgment against a debtor ensures that there is no "easy way out" of an obligation to pay for borrowers like Ms. Dunbar who choose not to pay on their mortgage loans for 14 years.

By not imposing a time period on the posting of a bond, other than the implied requirement that a bond must be in place before judgment can be rendered in a lender's/subsequent holder's favor, our legislature has

22

protected that lender's/holder's right to proceed with its otherwise valid claim, even if advertisement is not timely made, while at the same time protecting borrowers from the risk of multiple claims arising from the same indebtedness. Although, per the clear language of La. R.S. 13:3741, the advertisement of a lost note must occur within a reasonable time, a lender can obtain a surety bond at any time, and the person who has the right to enforce the note can obtain a judgment in its favor as long as the trial court determines that the maker is adequately protected from loss.

Furthermore, although there is no "reasonable time period" as to that part of La. R.S. 13:3741 concerning bonds, we find that HSBC's efforts to secure and post the bond in this case were in fact reasonable. The trial court's order allowing HSBC to post a bond was issued in March 2021. HSBC located a commercial surety to issue a bond, and the bond was issued in September 2022. HSBC then executed the bond, which was recorded in December 2022. All of this occurred before HSBC filed its motion for summary judgment on February 6, 2023.

Although whether the trial court correctly allowed HSBC to post bond pursuant to La. R.S. 13:3741 was the sole basis for Ms. Dunbar's opposition to HSBC's summary judgment motion, this Court will now review the remainder of the merits of HSBC's motion for summary judgment.

HSBC produced a true and correct copy of the Note which outlines Ms. Dunbar's loan obligations and shows that it is a negotiable instrument. As noted above, Ms. Dunbar admits that the Note is a true and correct copy of the Note she signed. The Note is payable to the order of "Lender," identified as Home 123 Corporation. HSBC presented evidence, not contradicted by Ms. Dunbar, that the Note was endorsed to New Century

Mortgage Corporation, which endorsed the Note in blank, and possession of the Note was transferred to the loan servicer, EMC Mortgage Corporation, which held the Note for Wells Fargo, as trustee for the Bear Stearns Mortgage Trust. Therefore, HSBC established that the Note is a promissory note, and HSBC's entitlement to enforce said note. In support of the motion for summary judgment, HSBC submitted an affidavit setting forth the existence and the extent of the indebtedness.

As set forth previously, *see* fn. 5, HSBC established that the Bear Stearns Mortgage Trust, through its trustee, was the last known holder of the Note prior to its loss. There were two lost note affidavits executed wherein representatives of the loan's servicers confirmed the loss of the original Note, its inability to be located, and that the loss of possession of the Note was not due to its cancellation or transfer. Thus, the Bear Stearns Mortgage Trust, through its trustee, was the last known holder of the Note and, although not currently in possession of the Note, HSBC, as the current trustee, is entitled to enforce the Note.

HSBC also alleged in its motion for summary judgment that Select Portfolio Servicing, Inc., the current loan servicer and attorney-in-fact for HSBC, secured a Lost Instrument Bond in the amount of $195,000, an amount equal to the face amount of the Note plus 25%. Further, this Bond has been recorded in the public record, and a certified copy of the Bond is attached to HSBC's motion for summary judgment. This Court, reviewing the record *de novo*, finds that the trial court did not err in granting summary judgment in favor of HSBC.

24

**CONCLUSION**

For the reasons set forth above, the March 22, 2023, judgment of the trial court granting the motion for summary judgment filed by plaintiff-appellee, HSBC Bank USA, National Association, as trustee for Bear Stearns Mortgage Funding Trust 2006-AC1 Asset Backed Certificates, Series 2006-AC1, and denying the exception of *res judicata* filed by defendant-appellant, Donnette Dunbar, is affirmed. Costs of this appeal are assessed to defendant-appellant, Donnette Dunbar.

**AFFIRMED.**